CASE NO. 23-11438

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

MASSACHUSETTS BAY INSURANCE COMPANY,

Appellant,

v.

D.C.D.J CORPORATION, D/B/A MARKEY INSURANCE GROUP and
MICHAEL BRANCH HENDERSON

Appellees.

---

On Appeal from the District Court for the
Northern District Of Georgia, Atlanta Division

---

**APPELLANT'S BRIEF**

---

GOODMAN MCGUFFEY LLP
Stephanie F. Glickauf
3340 Peachtree Road, NE, Suite 2100
Atlanta, GA 30326
Phone: (404) 264-1500
Fax: (404) 264-1737
sglickauf@gm-llp.com

Attorneys for Appellant Massachusetts Bay Insurance Company

**July 6, 2023**

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT (CIP)

In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

Ahmad, Syed S.

D.C.J.D. Corporation d/b/a Markey Insurance Group

Glickauf, Stephanie F.

Goodman McGuffey, LLP

Hanover Insurance Group, The

Henderson, Michael Branch

Hunton Andrews Kurth, LLP

Markey Insurance Group

Massachusetts Bay Insurance Company

**Appellant's Statement Regarding Oral Argument**

Appellant requests the opportunity to present oral argument before the Court to address the issues raised in the instant brief. The underlying case involves complex fact patterns and significant expert testimony that would benefit from oral argument.

# Table of Contents

Certificate Of Interested Persons And Corporate Disclosure Statement (CIP) ......... i

Appellant's Statement Regarding Oral Argument .................................................... ii

Table of Contents ........................................................................................... iii

Table of Citations .......................................................................................... v

Statement of Subject-Matter and Appellate Jurisdiction ..................................... viii

Statement of the Issues ................................................................................... 1

Statement of the Case .................................................................................... 2

    Relationships between the parties ............................................................... 2

    The underlying trip-and-fall occurrence ...................................................... 3

    Damages suffered by MBIC ....................................................................... 6

    Statement of the Proceedings in the Court Below ........................................ 9

    Standard of Review .................................................................................. 9

Summary of the Argument ............................................................................. 11

Argument and Citations of Authority ............................................................... 11

    The District Court erred when it denied MBIC's Motion for Partial Summary
Judgment because there is no genuine issue of material fact as to whether
Defendant D.C.J.D. breached its contract with Plaintiff. ..................................... 11

The District Court erred when it granted Defendants' Motion for Summary Judgment because the Court gave improper weight to the testimony of Defendants' expert. ...............................................................................13

The District Court overlooked evidence that, at the very least creates a genuine issue of material fact as to each of Appellants' enumerated issues......................19

    No evidence of damages .....................................................................19

    Voluntary Payment doctrine ...............................................................19

    Personal Lines Agreement..................................................................21

    Economic loss rule.............................................................................24

    Fiduciary issue ...................................................................................24

Conclusion ...........................................................................................27

Rule 7.1 Certificate of Compliance .....................................................viii

Certificate of Service .............................................................................ix

# Table of Citations

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986) ...... 10

*Ansley Marine Const., Inc. v. Swanberg*, 290 Ga. App. 388, 660 S.E.2d 6, 9 (2008) 25

*Apcoa, Inc. v. Fidelity National Bank*, 906 F.2d 610, 611 (11th Cir. 1990) ........ 10, 14

*Auto-Owners Ins. Co. v. Xytex Tissue Servs., LLC*, 421 F.Supp.3d 1369, 1375 (S.D.

 GA. 2019) ...................................................................................................... 20, 26

*Byrne v. Reardon*, 196 Ga. App. 735, 397 S.E.2d 22 (1990) ................................ 25, 26

*Carrizosa v. Chiquita Brands International, Inc.*, 47 F.4th 1278, 1328 – 1329 (11th

 Cir. 2022) ............................................................................................................... 19

*Celotex Corp. v. Catret*, 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986) ............. 10, 14

*Centurion Medical Liability Protective Risk Retention Group, Inc. v. Gonzalez*, 296

 F. Supp. 3d 1212, 1216 (2017) ................................................................................. 3

*Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636 (Ga. 2005) .................... 24

*Gervin v. Retail Property Trust*, 354 Ga. App. 11, 13 (2020) ............................... 15, 16

*High Tech Rail*, 871 S.E.2d at 77 .............................................................................. 13

*Int'l Indem. Co. v. Odom*, 174 Ga. App. 6, 328 S.E.2d 307, 309 (1985) ................... 26

*Johnson v. 3M*, 563 F.Supp.3d 1253, 1304 (N.D. GA. 2021) .................................... 24

*Jonas v. Jonas*, 280 Ga. App. 155, 160(3)(b), 633 S.E.2d 544 (2006) ...................... 25

*Jones Lang LaSalle Operations v. Johnson*, 350 Ga. App. 439, 440 (2019) ............. 16

*Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602, 607 (Ga. Ct. App. 2007) ................ 20

*Lee v. Mercury Insurance Company of Georgia*, 343 Ga. App. 729, 808 S.E.2d 116,

    130 (2017) ..................................................................................................... 20, 26

*Medley v. Home Depot*, 252 Ga. App. 398, 400 (2001) ................................................ 15

*Mock v. Kroger Co.*, 267 Ga. App. 1, 2 (2004) ........................................................... 15

*Moore v. GEICO Gen. Ins. Co.*, 633 Fed. Appx. 924, 931 (11th Cir. 2016) .............. 18

*National Property Owners Ins. Co. v. Wells*, 166 Ga. App. 281(2), 304 S.E.2d 458

    (1983) .............................................................................................................. 26

*North Shore Medical Center, Inc., v. Cigna Health and Life Insurance Company*, 68

    F.4th 1241, 1243 (11th Cir. 2023) ............................................................... 19

*Norton v. Budget Rent A Car System, Inc.*, 307 Ga. App. 501, 502 (2010) .............. 12

*Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2)(b) (1997) .................................... 15

*Taylor v. Golden Corral Corp.*, 255 Ga. App. 860, 863 (2002) ................................. 15

## Statutes

28 U.S.C.A § 1332(a) ............................................................................................... vii

28 U.S.C.A. § 1291 .................................................................................................. vii

O.C.G.A § 51-1-11(a) ............................................................................................... 24

## Other Authorities

FIDUCIARY, Black's Law Dictionary (11th ed. 2019) ............................................. 25

## Rules

Fed. R. Civ. Proc. 56(c) ................................................................................ 14

## Statement of Subject-Matter and Appellate Jurisdiction

The Northern District of Georgia had subject-matter jurisdiction over the instant dispute pursuant to 28 U.S.C.A § 1332(a) because there is a complete diversity of jurisdiction between Appellant and Appellees and the matter in controversy exceeded $75,000. This Court has appellate jurisdiction pursuant to 28 U.S.C.A. § 1291 because this appeal is taken from a final order by the District Court that disposed of all Plaintiff's claims. The District Court entered its order granting Appellee's motion for summary judgment on March 28, 2023. Appellant timely filed its notice of appeal on April 27, 2023, and the instant appeal was docketed with this Court on May 3, 2023.

## Statement of the Issues

1. The District Court erred when it denied Plaintiff Massachusetts Bay Insurance Company's Motion for Partial Summary Judgment because there is no genuine issue of material fact as to whether Defendant D.C.J.D Corporation breached its contract with Plaintiff.

2. The District Court erred when it granted Defendants' Motion for Summary Judgment because the Court gave improper weight to the testimony of Defendants' expert;

3. The District Court overlooked evidence that, at the very least creates a genuine issue of material fact as to whether Massachusetts Bay Insurance Company would have had to tender its policy limits regardless of Defendants' actions or failure to act.

**Statement of the Case**

**A.    Relationships between the parties:**

On or around December 12, 2006, Markey Insurance Group (hereinafter "Markey") entered into an Agency Agreement with various insurers within the Hanover Insurance Group (collectively "Hanover"), including Massachusetts Bay Insurance Company (hereinafter "MBIC"). [Appx. 49-3].[1] The Agency Agreement, to which various addenda were eventually added including authority to bind and sell commercial policies, was in effect at all times relevant hereto. [Appx. 50 p. 36:1-13; Appx. 49-2]. The Agency Agreement required Markey to promptly report all claims to Hanover: "You will report all claims to us promptly and in accordance with such of our procedure as we communicate to you." [Appx. 49-3 § 2.4].

The Agency Place, or "TAP," is the Hanover software platform that agents use to quote and issue Hanover policies. [Appx. 49 p. 94:7-13; Appx. 50 p. 48:1-3]. All Markey agents received training from Hanover representatives on how to use TAP and its various functions. [Appx. 50 pp. 48:21-51:14]. TAP includes a link whereby an agent can report claims to MBIC and other Hanover affiliates on behalf of the insured. [Appx. 49 pp. 96:8-97:22; Appx. 47-4]. Insureds cannot access TAP because users need a specific agent-only login to access the reporting function. [Appx. 49 p.

---

[1] The parties agree that Appx. 49-3 is a true and accurate copy of the 2006 Agency Agreement. [Appx. 50 p. 28:14-25]

97:23-25]. Michael Henderson, Formosa's agent for the 2017-2018 policy period, has reported claims on behalf of insureds in the past.[2]

Formosa purchased MBIC Businessowners Policy ODA D082627 (the "Policy") through agent Markey. [Appx. 49 p. 18:19-20:19]. The Policy was effective October 31, 2017, through October 31, 2018. [Appx. 47-5]. Mr. Henderson had authority to bind coverage with Hanover. [Appx. 49 pp. 31:20-22; 31:23-32:1].

## B.    The underlying trip-and-fall occurrence

On or about June 30, 2018, Larry Douglas tripped, fell and was injured in a store owned by Formosa (the "Incident"). [Appx. 15-2a ¶¶ 6-8].[3] Mr. Douglas allegedly tripped over a display platform in the store. [Appx. 47-7 ¶ 4].[4] Store employees did not find any foreign objects or relocated display platforms in the subject store. [Appx. 47-7 ¶ 5]. Mr. Douglas was a regular customer at the time of the subject accident and the subject store's layout, appearance, inventory, and display platforms had been substantially the same for years prior to the Incident. [Appx. 47-7 ¶¶ 5-7]

---

[2] Although, he could not recall whether he ever used TAP to do so. [Appx. 49 p. 97:4-9].

[3] "A court 'may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *Centurion Medical Liability Protective Risk Retention Group, Inc. v. Gonzalez*, 296 F. Supp. 3d 1212, 1216 (2017) citing *U.S. ex rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

[4] *Id*.

Adam Hwang, the owner of Formosa called Michael Henderson within a few days to notify him of the Incident. [Appx. 49 pp. 52:25-53:12; Appx. 15-2 ¶ 4][5]. Mr. Hwang asked Mr. Henderson to go to the store location and speak with the manager about the subject Incident. [Appx. 49 p. 53:15-19; Appx. 15-2 ¶ 4]. Mr. Henderson did not advise Mr. Hwang during that phone call to report the claim to Hanover. [Appx. 49 pp. 53:20-54:1].

Mr. Henderson went to the store location and spoke with the manager, as requested. [Appx. 49 p. 55:5-10]. Mr. Hwang was not present for this meeting. [Appx. 49 p. 66:8-9]. Mr. Henderson testified that he advised the store manager to call the Hanover Claims Department to report the claim. [Appx. 49 p. 56:18-24]. He gave the manager a copy of the policy declarations, which does not include contact information for Hanover or MBIC, only contact information for Markey. [Appx. 49 pp. 56:18-64:7]. Mr. Henderson testified that he handwrote the number for the claims department but cannot recall whether he wrote it down on the declarations page or the folder with it and cannot recall whether he labeled the phone number in any way. [Appx. 49 pp. 64:7-65:17]. It is undisputed that neither Mr. Henderson nor Formosa reported the claim to Hanover at that time and that Mr. Henderson did not inquire or follow up to make sure that the claim had been reported.

---

[5] *Id.*

On November 19, 2018, approximately five months after the Incident, Formosa was served with Larry and Ann Douglas' lawsuit related to the Incident. [Appx. 15-2 ¶ 6]. After being served, Adam Hwang went to Markey's office to give Michael Henderson copies of the Complaint and Summons. [Appx. 49 pp. 68:7-71:24; Appx. 15-2 ¶ 6]. According to Mr. Hwang, Mr. Henderson advised him that Markey would "take care of" the matter. [Appx. 15-2 ¶ 7]. Mr. Henderson testified that he reminded Mr. Hwang and advised him that these were legal documents sent by an attorney and that he "should respond to them and give them your insurance information." [Appx. 49 p. 72:16-23]. Mr. Henderson did not inquire to see whether the claim had been reported and took no action to notify MBIC of the subject claim or lawsuit. [Appx. 49 p. 75:10-12]

Formosa never answered the lawsuit, and the matter went into default in December of 2018. [Appx. 15-2b ¶¶ 6-7]. Larry and Ann Douglas filed a Motion for Default Judgment on January 28, 2019. [Appx. 15-2b]. On the same day he received the Motion for Entry of Default Judgment in the mail, which was sometime during the week of January 28, 2019, Mr. Hwang promptly hand-delivered it to Mike Henderson. [Appx. 49 pp. 75:20-76:11; Appx. 15-2 ¶ 9]. Mr. Henderson did not read the legal documents, did not ask Mr. Hwang whether he had responded to the attorney, did not ask Mr. Hwang whether he had opened a claim, did not ask Mr. Hwang whether MBIC had provided him with an attorney, and did not contact MBIC

to advise them of the Motion for Entry of Default Judgment. [Appx. 49 p. 76:11-78:10]. "I advised him - reminded him on how to initiate the claim and advised him you must answer this attorney. You're being contacted from an attorney and provide them the insurance information." [Appx. 49 p. 76:12-16].

Tragically, on April 15, 2019, Larry Douglas took his own life, allegedly because of the pain he claimed to have incurred from the Incident. [Appx. 1 ¶ 13]. Ann Douglas filed a Motion for Substitution of Plaintiff on September 10, 2019. [Appx. 15-2c]. Adam Hwang again hand-delivered the pleading to Michael Henderson on the day he received it. [Appx. 15-2 ¶ 12]. On September 30, 2019, almost ten months after entry of the default and fifteen months after the Incident, Michael Henderson finally reported the Incident and lawsuit to MBIC via email. [Appx. 49 pp. 85:23-87:16; Appx. 47-11].

## C.    Damages suffered by MBIC

Upon notice of the lawsuit, MBIC immediately undertook Formosa's defense under a full reservation of rights. [Appx. 47-13]. MBIC needed to evaluate whether Formosa's notice to Markey and Henderson would be imputed to it for the purposes of coverage. [Appx. 35]. Defense counsel attempted to open the default against Formosa, but the Motion to Open Default was denied by the State trial court. [Appx. 47-14]. Ann Douglas, individually and as estate executor, sent MBIC a time-limited demand, in response to which MBIC, foreclosed from the ability to assert liability

defenses, was forced to tender its $1 million policy limit to protect the interests of its insured. [Appx. 47-15].

On February 21, 2022, MBIC disclosed R. Wade Vandiver, of Vandiver Law and Mediation, PLLC, as its expert to testify as to whether the late reporting of the claim to MBIC affected MBIC's decision to accept the time-limited demand for policy limits. [Appx. 35]. Vandiver's written report was filed as Exhibit A to the disclosure. [Appx. 35]. In his written report, Vandiver opined that "Because MBIC was unable to properly investigate the Douglases' personal injury claims, MBIC was unable to properly defend Formosa by developing **available, meritorious** liability defenses which could have significantly impacted the claim's value." [Appx. 35 (emphasis added)]. He specifically opined that "the settlement value of the Douglases' claim was not a foregone conclusion because liability defenses existed at the time the Douglases filed suit." [Appx. 35]. Citing fact witness testimony and the trial court's order, finding that Formosa met the requirement of establishing a meritorious defense, Vandiver opined that, prior to the default judgment, "defenses were available to Formosa that could have resulted in a complete defense verdict, if not significantly reduced the liability to Formosa." [Appx. 35]. Markey and Mr. Henderson did not depose Mr. Vandiver, nor did they raise any challenges to Vandiver's expert qualifications or the admissibility of his opinions.

Instead, Markey and Mr. Henderson designated Louis G. Fey, Jr. as their expert witness with regard to "the role of insurance agents and reporting claims … the evaluation of the underlying Douglas Claim from a claims handling perspective … and the reasonableness of MBIC's acceptance of the Douglas Holt Demand." [Appx. 67 pp. 29:24-30:11]. Mr. Fey is not a lawyer and did not offer expert opinions evaluating legal defenses in Georgia. [Appx. 67 pp. 30:21-31:19]. On the issue of whether Markey had a duty to report the claim to MBIC, Mr. Fey even opined that, if Mr. Hwang's version of events is accurate, then Mr. Henderson should have reported the claim. [Appx. 67 p. 120:2-8]. Fey testified that insurance carriers would rather know about a claim promptly no matter who it comes from than not know about a claim at all so that they can investigate the claims. [Appx. 67 pp. 53:16-55:22]. Fey opined that "in this case the policy limits were a foregone conclusion." [Appx. 67 p. 96:9-10]. However, Fey admitted that, had the case been litigated prior to the Default Judgment, it may have been possible for Formosa to prevail on a motion for summary judgment. [Appx. 67 p. 100:13-20]. Fey admitted that one doesn't know whether there are defenses to liability until you investigate. [Appx. 67 pp. 112:12-113:3].[6] "[T]he faster you get a claim the lower the eventual payout on average. So there's always a push to try to get claims reported promptly." [Appx. 67 p. 152:14-17]. The only reason MBIC had no chance to investigate and present argument on

---

[6] "Well, when you start your investigation you don't know…" [Appx. 67 p. 113:2-3].

liability was because the case was in default when it was finally reported to MBIC. [Appx. 67 p. 99:13-21].

**D.    Statement of the Proceedings in the Court Below**

MBIC filed its complaint against Markey and Michael Henderson on March 11, 2021, raising claims for Breach of Contract, Negligence, and Breach of Fiduciary Duty. [Appx. 1]. On June 30, 2022 MBIC filed a motion for partial summary judgment on its breach of contract claim against Appellees. [Appx. 83]. On June 30, 2022 Appellees filed their joint motion for summary judgment on all claims. [Appx. 83]. On August 11, 2022, Appellant filed its brief in response to Appellee's joint motion for summary judgment. [Appx. 83]. On August 12, 2022 Appellees filed their briefs in response to Appellant's motion for partial summary judgment. [Appx. 83]. On August 25, 2022, Appellant filed its reply brief in support of its motion for partial summary judgment. [Appx. 83]. On August 25, 2022, Appellees filed their reply brief in support of their motion for summary judgment. [Appx. 83]. None of the parties requested oral argument before the District Court. [Appx. 83]. On March 28, 2023, the District Court entered an order denying Appellant's motion and granting Appellees' joint motion for summary judgment. [Appx. 83]. On April 27, 2023, Appellant filed its Notice of Appeal. [Appx. 83].

**E.    Standard of Review**

The standard of review on appeal from summary judgment is *de novo*,

"'applying the same legal standards used by the District Court.'" *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1159 (11th Cir. 2022) citing *Yarbrough v. Decatur Hous. Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019). Summary judgment should be rendered by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The party moving for summary judgment holds the initial burden of demonstrating the nonexistence of dispute over material facts. *Celotex Corp. v. Catret*, 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986); *Apcoa, Inc. v. Fidelity National Bank*, 906 F.2d 610, 611 (11th Cir. 1990). After the movant has carried its burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing there is genuine issue for trial." *Id*. at 324. While the Court is to view all evidence and factual inferences in a light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986).

**Summary of the Argument**

This case stems from an underlying trip-and-fall action which resulted in a Default Judgment against Formosa Enterprises, LLC ("Formosa"). Formosa was insured under a liability coverage policy issued by Appellant and purchased though Appellees as its insurance agent. Per their Agency Agreement with Appellant, Appellees had a contractual obligation to promptly report claims to Appellant upon notice. Formosa promptly notified Appellees of the Incident, but Appellees failed to notify Appellant of the Incident for almost fifteen months, even after a lawsuit had been filed against Formosa and a default order entered.

Appellees' breach severely prejudiced Appellant because it deprived Appellant of any opportunity to investigate the claim and evaluate whether affirmative defenses to liability existed. Due to Appellee's breach of their contractual duty, Appellant was left with no choice but to settle the claim for policy limits. The District Court erred when it denied summary judgment on Appellant's breach of contract claim and instead granted summary judgment in favor of Appellees.

**Argument and Citations of Authority**

1. **The District Court erred when it denied MBIC's Motion for Partial Summary Judgment because there is no genuine issue of material fact as to whether Defendant D.C.J.D. breached its contract with Plaintiff.**

It is undisputed that the Agency Agreement between the parties constitutes a valid contract. "Performance, to be effectual, must be accomplished by the party

bound to perform … and must be substantially in compliance with the spirit and the letter of the contract and completed within a reasonable time." O.C.G.A. § 13-4-20. "'The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to the complain about the contract being broken.'" *McAlister v. Clifton*, 313 Ga. 737, 873 S.E.2d 178 (Ga. 2022) citing *Norton v. Budget Rent A Car System, Inc.*, 307 Ga. App. 501, 502 (2010).

The Agency Agreement between MBIC and Markey states explicitly in § 2.4 "You will report all claims to us promptly and in accordance with such of our procedures as we communicate to you." [Appx. 49-3 § 2.1]. Additionally, § 2.1 of the agency agreement requires Markey to notify MBIC "of any additional information you acquire that, to the best of your knowledge, affects the rating of the risk." That subsection is entitled "Keep Us Informed." [Appx. 49-3 § 2.1]. Under the plain language of the Agency Agreement, Markey owed a duty to provide prompt notification to MBIC of the insured's claim. [Appx. 49-3 § 2.4]. Markey, through its representative David Markey, admitted in their deposition that they did not promptly call MBIC to report the subject loss. [Appx. 50 p. 76:22].

In the District Court, Markey argued that the second clause of § 2.4: "and in accordance with such of our procedures as we communicate to you" relieved them of their duty to report, because they claim Hanover has expressed a *preference* (but not

a requirement) that it be notified of claims by insureds directly. However, despite this *preference*, the TAP software used by Hanover agents includes a function, accessible only by agents and not insureds, explicitly for the purpose of reporting claims. Clearly, therefore, Markey and Mr. Henderson were provided with a procedure intended to allow them to perform their obligation to promptly report claims to MBIC, regardless of the preferred methodology.

"'The cardinal rule of [contract] construction is to ascertain the contracting parties' intent, and where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties.'" *High Tech Rail*, 871 S.E.2d at 77. The plain language of the Agency Agreement clearly and unambiguously requires Markey to "report all claims to us promptly," which they admit they did not do. [Appx. 50 p. 76:22]. Markey's abject failure to take any steps to ensure the Incident and subsequent litigation was timely reported by anyone cannot be reconciled with the contractual duty of prompt notice. As a matter of law, Markey and Mr. Henderson breached their duty to MBIC under the Agency Agreement.

**2.     The District Court erred when it granted Defendants' Motion for Summary Judgment because the Court gave improper weight to the testimony of Defendants' expert.**

Markey's motion for summary judgment argued, in part, that summary judgment is appropriate because MBIC cannot prove the essential element of

damages. Summary judgment should only be rendered by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The party moving for summary judgment holds the initial burden of demonstrating the nonexistence of dispute over material facts. *Celotex Corp. v. Catret*, 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986); *Apcoa, Inc. v. Fidelity National Bank*, 906 F.2d 610, 611 (11th Cir. 1990).

Markey points to the following testimony from Louis Fey: "Q. … So are you saying that even if Formosa, the store, did nothing wrong that this would've been a one million-dollar case? A. It would've been in excess of a million dollars." [Appx. 67 pp. 94:17-95:2]. Fey's opinions are wholly speculative and do not satisfy Markey's burden of demonstrating that no genuine dispute of material fact exists. "[T]he purpose of the expert admissibility rules is to enlist the federal courts as 'gatekeepers' tasked with screening out 'speculative' and 'unreliable expert testimony.'" *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11ᵗʰ Cir. 2021).

The Douglas lawsuit was an action for negligence under the theory of premises liability. [Appx. 15-2a]. Under Georgia law, an "owner/occupier is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good businessperson is accustomed to use in such matters." *Taylor v. Golden Corral Corp.*, 255 Ga. App. 860, 863 (2002) Citing

*Medley v. Home Depot*, 252 Ga. App. 398, 400 (2001). "To recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to the actions or conditions within the control of the owner/occupier." *Mock v. Kroger Co.*, 267 Ga. App. 1, 2 (2004) citing *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2)(b) (1997). "Georgia's longstanding prior traversal rule provides that 'when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have equal knowledge of it and cannot recover for a subsequent injury resulting therefrom'." *Gervin v. Retail Property Trust*, 354 Ga. App. 11, 13 (2020) "'The rule imputing knowledge of a danger to a person who has successfully negotiated an alleged dangerous condition before applies only to cases involving a static condition that is readily discernible to a person exercising reasonable care for his own safety'." *Id*. "A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it." *Id*, citing *Jones Lang LaSalle Operations v. Johnson*, 350 Ga. App. 439, 440 (2019).

The District Court completely ignored the evidence of damages outlined in MBIC's expert's report. MBIC properly disclosed R. Wade Vandiver as an expert for its case-in-chief to present relevant admissible expert opinion testimony as to the potential outcome of Formosa's defense if Markey and Henderson had timely

disclosed the loss. In his report, Vandiver opined that "Because MBIC was unable to properly investigate the Douglases' personal injury claims, MBIC was unable to properly defend Formosa by developing **available, meritorious** liability defenses which could have significantly impacted the claim's value." [Appx. 35 (emphasis added)]. He specifically opined that "the settlement value of the Douglases' claim was **not a foregone conclusion** because liability defenses existed at the time the Douglases filed suit." [Appx. 35 (emphasis added)].

It is undisputed that Mr. Douglas fell on June 30, 2018, sustained significant injuries, incurred significant medical expenses, and ultimately took his life in April of 2019. [Appx. 1 ¶ 13; Appx. 10 ¶ 13]. However, when Markey breached its contractual duty to provide prompt notice of the claim, Markey deprived MBIC of any opportunity to investigate the factual circumstances leading to Mr. Douglas' fall and to assert any liability defenses. Vandiver's opinions were based on his review of pleadings and orders from the Douglases' lawsuit, pleadings in the District Court, discovery responses and document production from both parties, medical records, and fact witness deposition transcripts. He pointed out that store employees testified that no foreign objects or relocated displays were found upon inspection after Mr. Douglas' fall. Additionally, he pointed out that Ms. Douglas made admissible statements that both she and her husband were regular customers at the store. Due to the fifteen-month delay, caused by Markey and Mr. Henderson, MBIC could not

interview Mr. Douglas before he took his own life or conduct any investigation into evidence to support affirmative defenses to the insured's lability. In fact, the State trial court even found that Formosa met the requirement of establishing a meritorious defense, despite denying its motion to open default on other grounds. [Appx. 47-14 p. 3]. Based on all of these facts in the record, Vandiver opined that, prior to the default judgment, "defenses were available to Formosa that could have resulted in a complete defense verdict, if not significantly reduced the liability to Formosa." [Appx. 35]. Markey and Mr. Henderson did not depose Mr. Vandiver, nor did they raise any challenges to Vandiver's expert qualifications or the admissibility of his opinions.

The District Court ignored this key expert opinion evidence in MBIC's case-in-chief and, instead, focused its attention on testimony from Louis Fey. Louis Fey is not a lawyer and did not offer any expert opinions evaluating legal defenses in Georgia. [Appx. 67 pp. 30:21-31:19]. Mr. Fey admitted in his testimony that timely reporting is essential because insurers need an opportunity to investigate claims for possible defenses. [Appx. 67 pp. 53:16-55:22]. Mr. Fey admitted that, had the case been litigated prior to the Default Judgment, it may have been possible for Formosa to prevail on a motion for summary judgment. [Appx. 67 p. 100:13-20]. Mr. Fey admitted that one doesn't know whether there are defenses to liability until you

investigate. [Appx. 67 pp. 112:12-113:3].[7] Despite all of this, Mr. Fey somehow concluded that "in this case the policy limits were a foregone conclusion." [Appx. 67 p. 96:9-10].

Mr. Fey's ultimate opinion in this case is wholly speculative because it is based entirely on the assumption that there were no affirmative defenses available to the insured prior to the entry of the default judgment. However, even if Fey's speculative opinions are admissible, they do not simply negate the admissible expert opinions offered by MBIC's own expert witness, R. Wade Vandiver. "[A district court] should not simply ignore the testimony or deem the expert not credible." *Moore v. GEICO Gen. Ins. Co.*, 633 Fed. Appx. 924, 931 (11th Cir. 2016). It is for a jury to determine which expert's testimony holds greater weight. "A district court errs if it weighs the evidence or makes credibility determinations at the summary judgment stage." *Carrizosa v. Chiquita Brands International, Inc.*, 47 F.4th 1278, 1328 – 1329 (11th Cir. 2022). "'If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment.'" *North Shore Medical Center, Inc., v. Cigna Health and Life Insurance Company*, 68 F.4th 1241, 1243 (11th Cir. 2023).

Further, Markey and Mr. Henderson deprived MBIC of the ability to investigate and identify evidence to support significant liability defenses that could

---

[7] "Well, when you start your investigation you don't know …" [Appx. 67 p. 113:2-3].

have provided a complete defense to liability in the underlying lawsuit. Markey should not now benefit from the dearth of evidence caused by their own breach. Fey admitted in his testimony that "the faster you get a claim the lower the eventual payout on average. So there's always a push to try to get claims reported promptly." [Appx. 67 p. 152:14-17]. This is because, when there is a timely disclosure, more evidence is available to develop liability defenses.

The contrast between Fey's testimony and Vandiver's opinions clearly shows that reasonable minds can differ on the inferences arising from the facts in this case. Therefore, it is a question for the jury whether Appellant could have resolved the Douglas claim for any dollar amount less than $1 million if it had affirmative defenses to liability available to it prior to the State trial court entering default judgment.

### 3.    The District Court overlooked evidence that, at the very least creates a genuine issue of material fact as to each of Appellants' enumerated issues.

#### a.    No evidence of damages

As discussed in the previous enumeration of error above, Vandiver's opinions, which were ignored by the district court, create a genuine issue of material fact precluding summary judgment on the issue of damages.

#### b.    Voluntary Payment doctrine

The voluntary payment doctrine does not apply in this case because MBIC had

a duty under the Policy to tender its limits in defense of Formosa. Formosa's representative notified Markey of Mr. Douglas' claim within days of the Incident, again on the day service of the Complaint was perfected, again on November 19, 2018, and a fourth time during the week of January 28, 2019. "[I]t is possible for an insurer to place an independent agent 'in a position of apparent authority such that one might be justified in assuming that the agent had authority to receive notice of an occurrence or claim.'" *Auto-Owners Ins. Co. v. Xytex Tissue Servs., LLC*, 421 F.Supp.3d 1369, 1375 (S.D. GA. 2019) quoting *Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602, 607 (Ga. Ct. App. 2007). This relationship is known as dual agency. *Id*. Evidence that an insurance agent has authority to bind an insurance policy with an insurance carrier supports a finding of dual agency. *Lee v. Mercury Insurance Company of Georgia*, 343 Ga. App. 729, 808 S.E.2d 116, 130 (2017). Markey agents had authority to bind insurance policies with Hanover. The evidence in this case overwhelmingly demonstrates that Markey and Mr. Henderson were dual agents of MBIC and Formosa.

As Markey noted in their briefs in the District Court, Formosa still must have justifiably relied on Markey's apparent authority. However, Markey's own expert opined that Mr. Henderson's representation that he would "take care of it" would have constituted an undertaking of the responsibility to report Formosa's claim. [Appx. 67a p. 7 ¶ N]. The same expert opined that "MBIC had an overriding duty to

protect the interests of Formosa …" [Appx. 67a p. 10 ¶ KK]. Mr. Henderson even personally went to the subject property to investigate the subject fall after it was reported to him. Finally, The Hanover Insurance Group Facebook Page explicitly states that contacting an insured's independent agent is one method by which claims can be reported. [Appx. 67-3][8]

Markey's briefs completely ignore the sworn statement from Adam Hwang averring that Mr. Henderson told Mr. Hwang that he would "take care of" the claim; this is evidence of justified reliance on apparent authority. Arguendo, at the very least this creates a question of fact, and this Court cannot find as a matter of law that the coverage conditions were not met.

### c.    Personal Lines Agreement

On or around December 12, 2006, Markey entered into an Agency Agreement with the following companies of the Hanover Insurance Group: The Hanover Insurance Company, Massachusetts Bay Insurance Company, Citizens Insurance Company of America, and Allmerica Financial Alliance Insurance Company. [Appx. 49-3][9] The Agency Agreement commenced in 2006 and continued at all relevant times in this matter outlined below. [Appx. 49-3; Appx. 49-2]. There is no evidence

---

[8] "If you need help with a policy or a claim, please call your independent agent, contact us at 800-628-0250 or through http://www.hanover.com/claims.html" [Appx. 67-3]

[9] The parties agree that Appx. 49-3 is a true and accurate copy of the 2006 Agency Agreement. [Appx. 50 p. 28:14-25]

that a subsequent agency agreement was signed in 2009. [Appx. 50 pp. 25:19-26:16].[10] Markey has not produced any additional agency agreements between the parties in this case.

Several addenda were signed to supplement the Agency Agreement and provide Markey with additional authorities, including the authority to sell and bind commercial policies. [Appx. 50 pp. 25:13-18; 36:1-13]. However, no subsequent agency agreements between the parties were signed thereafter. [Appx. 50 p. 25:11-12]. The parties agree that Hanover and Markey were working under the relevant provisions of the Agency Agreement at all times relevant to the subject Incident, including those related to notice. [Appx. 50 p. 28:22-25][11] In 2010 Markey signed a supplemental schedule of authority permitting it to bind commercial policies with MBIC. [Appx. 50 p. 36:1-13; Appx. 49-2]. Markey understood that supplemental schedules of authority did not change the processes and agreements discussed in the 2006 Agency Agreement. [Appx. 50 p. 33:12-22].

---

[10] "Q: So no new agency agreement was signed in 2009? – A: I don't know. – Q: Is that something that would be kept somewhere in the company documents? – A: If we had an agency agreement, it is something that would be kept. I remember there's one that we have from 2006. … I don't know that I have a copy of an additional agency agreement that was signed… If there was one in my office, we would have provided it to you."

[11] "Q: Does this appear to be the Agency Agreement that you believe that Hanover and Markey were working under in 2018? A: Yes."

The incorporation provisions of the addenda present a patent ambiguity because they list the date of the contract to be incorporated as December 12, 2009, but the original contract was executed on December 12, 2006. In fact, the "2009" referenced in other documents appears to be a typographical error as evidenced by the fact that none of the parties are aware of a 2009 agreement, none of the parties have a 2009 agreement and it is suspiciously coincidental that any such 2009 agreement would have also been signed on December 12th.  Regardless, where there is a patent ambiguity, the court "'must apply the rules of contract construction to resolve the ambiguity." *Wright v. IC Enterprises, Inc.* 330 Ga. App. 303, 308, 735 S.E.2d 484 (2014) citing *Fab'rik Boutique v. Shops Around Lenox*, 329 Ga.App. 21, 22-23, 763 S.E.2d 492 (2014). "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." O.C.G.A. § 13-2-3. A simple date mistake or typographical error is insufficient to void an incorporation provision. *Wright* supra at 308 citing *Zakaria v. McElwaney*, 174 Ga. App. 149, 151(2), 329 S.E.2d 310 (1985). As discussed in Appellant's first enumeration of error, it is clear that, as a matter of law, Markey and Mr. Henderson breached their duty to MBIC under the Agency Agreement.

####    d.    Economic loss rule

Markey cites *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636 (Ga. 2005) for the proposition that "the economic loss rule generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *Id*, at 637

However, the economic loss rule "has no application where the defendant breaches a duty imposed by law or arising from a special relationship." *Johnson v. 3M*, 563 F.Supp.3d 1253, 1304 (N.D. GA. 2021) citing O.C.G.A § 51-1-11(a). Markey was MBIC's fiduciary as a dual agent. This is clearly a "special relationship" as contemplated by *Johnson*, *supra*. Therefore, Markey owed fiduciary duties to MBIC independent of the contract between the parties. As such, the economic loss rule has no application in this case.

####    e.    Fiduciary issue

A claim for breach of fiduciary duty requires proof of three elements "(1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach." *Ansley Marine Const., Inc. v. Swanberg*, 290 Ga. App. 388, 660 S.E.2d 6, 9 (2008) citing *Jonas v. Jonas*, 280 Ga. App. 155, 160(3)(b), 633 S.E.2d 544 (2006). Black's Law Dictionary defines a fiduciary as "someone who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, loyalty, due care,

and disclosure." FIDUCIARY, Black's Law Dictionary (11th ed. 2019).

The terms of the Agency Agreement explicitly state that Markey is MBIC's fiduciary and owes a fiduciary duty to Plaintiff.[12] Even Markey's own expert, Thomas Ahart, opined that Markey owed a fiduciary duty to MBIC. [Excerpts from Depo. of Thomas Ahart, Appx. 51 pp. 34:2-8; 56:6-24; 85:7-19]. Further, as a matter of law, Markey owed a fiduciary duty to MBIC as a dual agent of both MBIC and Formosa. In *Byrne v. Reardon*, 196 Ga. App. 735, 397 S.E.2d 22 (1990), the Court held that "[w]hile an independent insurance agent or broker is normally considered the agent of the insured, it can also be a dual agent for both the insurer and the insured. *Citing National Property Owners Ins. Co. v. Wells*, 166 Ga. App. 281(2), 304 S.E.2d 458 (1983). In *Byrne*, the Court found that the agency owned a duty to the insurance company as a dual agent to use reasonable care and forward the lawsuit papers to the insurance company in a timely manner. *Byrne* at 24.

> To determine whether an insurance agent is a dual agent of the insured and insurer with the apparent authority to receive notice, Georgia courts generally look to whether the insurer placed the independent agent "in a position of apparent authority so that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has the authority to

---

[12] "2.10  Fiduciary Responsibilities. All premiums and/or other monies paid to you or collected by you in connection with our policies ("Funds") are our property. Commissions, if any, payable out of such Funds are debts we owe you. **You are our fiduciary** and you will hold any and all such Funds in your fiduciary capacity. You are responsible for maintaining and providing to us an accurate accounting of all such Funds and to pay on a timely basis all Funds due to us in accordance with this Agreement." (emphasis added) [Appx. 49-3 ¶ 2.10].

perform a particular act and deals with the agent upon that assumption."

*Auto-Owners Insurance Company v. Xytex Tissue Services, LLC*, 421 F.Supp.3d 1369, 1375 (2019) citing *Int'l Indem. Co. v. Odom*, 174 Ga. App. 6, 328 S.E.2d 307, 309 (1985). Evidence that an insurance agent has authority to bind an insurance policy with an insurance carrier supports a finding of dual agency. *Lee v. Mercury Insurance Company of Georgia*, 343 Ga. App. 729, 808 S.E.2d 116, 130 (2017). Markey agents had authority to bind insurance policies with Hanover. The evidence in this case overwhelmingly demonstrates that Markey and Mr. Henderson were dual agents of MBIC and Formosa.

It is important to note that there are two competing narratives of the chain of events in this case: Adam Hwang claims that Michael Henderson told Mr. Hwang that Mr. Henderson would "take care of" providing notice to MBIC of the claim; whereas Michael Henderson denies this statement and claims he always told Mr. Hwang to report the claim himself. For the purposes of this appeal, we are assuming Mr. Henderson's version of the facts to be true. Assuming these facts in the light most favorable to Appellees, partial summary judgment in favor of MBIC would be proper. It was in the best interest of both Formosa and MBIC that MBIC receive prompt notice of the subject occurrence. Even assuming Michael Henderson told Mr. Hwang to report the claim, Mr. Henderson chose to bury his head in the sand again and again and again, and not only failed to give notice to MBIC but failed to confirm

or even investigate whether Mr. Hwang/Formosa had given notice. Mr. Henderson buried his head in the sand, after he was told about the claim and the lawsuit time and time again. Mr. Henderson chose to bury his head in the sand even after a Motion for Default Judgment was presented to him by Mr. Hwang, making it abundantly clear that the matter had not been reported to MBIC. Appellees chose not to notify MBIC of the claim for approximately fifteen (15) months. MBIC does not contend that it was improper for Markey or its agents to direct Formosa to report the claim directly. Rather, Appellees' abject failure to take any further steps to ensure the Incident and subsequent litigation was timely reported by anyone was improper. Not only did Appellees breach the contract by failing to give prompt notice, but Appellees' egregious actions and failure to act also breached their fiduciary duties to MBIC.

## Conclusion

Partial summary judgment on the issues of duty and breach in favor of Appellant are appropriate and genuine disputes as to material facts in the case preclude summary judgment on each of the theories raised in Markey and Mr. Henderson's joint motions for summary judgment.

This 6th day of July, 2023.

*Signature on following page*

27

Goodman McGuffey LLP

Attorneys for Massachusetts Bay Insurance Company

By:    */s/ Stephanie F. Glickauf*
       STEPHANIE F. GLICKAUF
       GA State Bar No.  257540
       sglickauf@GM-LLP.com
       3340 Peachtree Road NE, Suite 2100
       Atlanta, GA 30326-1084
       (404) 264-1500 Phone
       (404) 264-1737 Fax

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| MASSACHUSETTS BAY INSURANCE COMPANY, | |
| Appellant, | Case No. 23-11438 |
| v. | |
| D.C.J.D. CORPORATION, d/b/a MARKEY INSURANCE GROUP and MICHAEL BRANCH HENDERSON, | |
| Appellees. | |

**RULE 7.1 CERTIFICATE OF COMPLIANCE**

The foregoing document is double spaced in 14-point Times New Roman font and complies with the type-volume limitation set forth in FRAP 32(5)(a) and 11th Cir. R. 32-4.

/s/ STEPHANIE F. GLICKAUF
STEPHANIE F. GLICKAUF
GA State Bar No.  257540
sglickauf@GM-LLP.com
3340 Peachtree Road NE, Suite 2100
Atlanta, GA 30326-1084
(404) 264-1500 Phone
(404) 264-1737 Fax

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

MASSACHUSETTS BAY
INSURANCE COMPANY,

Appellant,                                    Case No. 23-11438

v.

D.C.J.D. CORPORATION, d/b/a
MARKEY INSURANCE GROUP and
MICHAEL BRANCH HENDERSON,

    Appellees.

---

## CERTIFICATE OF SERVICE

This is to certify that I electronically filed this **Appellant's Brief** with the

Clerk of Court using the CM/ECF system which will automatically send to:

| | |
|---|---|
| Syed S. Ahmad, Esq. | Yaniel Abreu, Esq. |
| Hunton Andrews Kurth LLP | Hunton Andrews Kurth LLP |
| 2200 Pennsylvania Avenue, NW | Wells Fargo Center |
| Washington, DC  20037 | 333 SE 2nd Avenue, Suite 2400 |
| sahmad@HuntonAK.com | Miami, FL 33131 |
| | yabreu@HuntonAK.com |

This 6th day of July, 2023.

*/s/ Stephanie F. Glickauf*
STEPHANIE F. GLICKAUF
GA State Bar No.  257540
sglickauf@GM-LLP.com
3340 Peachtree Road NE, Suite 2100
Atlanta, GA 30326-1084
(404) 264-1500 Phone, (404) 264-1737 Fax